UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GATES THAT OPEN, LLC,

    Plaintiff,

v.                                            Case No.:

GTO PARTS, LLC; and                           **PLAINTIFF DEMANDS TRIAL**
JYT ENTERPRISES, INC.,                        **BY JURY**

    Defendants.

_____/

### COMPLAINT

    Plaintiff, Gates That Open, LLC d/b/a GTO ("GTO"), sues defendants, GTO Parts, LLC ("GPL") and JYT Enterprises, Inc. ("JYT"), and alleges:

### Background

    1.   GTO is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business in Tallahassee, Florida.

    2.   On information and belief, GPL is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business in Hialeah, Florida.

    3.   On information and belief, JYT is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Clermont, Florida.

    4.   This action arises under the Patent, Trademark and Copyright Laws, as is hereafter more fully alleged, and

therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. secs. 1331 and 1338(a).  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

5.   On information and belief, defendants are subject to personal jurisdiction in this Court pursuant to Section 48.193(1)(a), Fla. Stat., because they are operating, conducting, engaging in, or carrying on a business or business venture in this State or have an agency or office in this State, and pursuant to Section 48.193(2), Fla. Stat., because they are engaged in substantial and not isolated activity within the State.

## GTO and its Intellectual Property

6.   GTO was established in 1987 and is a leading United States manufacturer of low voltage (DC) and alternating current (AC) gate openers and access controls.  GTO gates are used in residential and commercial applications.  More than 1 million GTO gate openers have been installed around the world.  GTO designed every component of its gate openers at its facility in Tallahassee.

7.   The market for automatic gate openers and replacement parts is highly competitive.  GTO differentiates itself in a crowded market through ongoing research and development resulting in high quality, reliable products and replacement parts.

8.   A core feature of GTO's products is that they are tested and certified by Electrical Testing Laboratories to meet

or exceed Underwriters' Laboratory ("UL") standards (UL325). The UL325 standard was instituted in the automatic gate opener industry following Consumer Products Safety Commission reports of serious injuries and deaths associated with the equipment. The fact that GTO's products are UL listed is evidence of the high quality of its products and provides a significant advantage in the market. The process required to comply with UL325, however, is expensive and thus results in GTO's products generally being priced higher than non-certified products sold by some of GTO's competitors (primarily foreign).

9. GTO has developed a reputation for offering high quality products and, as a result, has won considerable goodwill for its business.

10. In order to protect and enhance its reputation and goodwill in the market, GTO engages in a comprehensive program to protect its intellectual property.

11. GTO has duly registered the trademarks "GTO", "GTO/PRO" and "Mighty Mule" for automatic gate openers and associated products in the United States Patent and Trademark Office. Copies of Registration Nos. 2158895, 2045729 and 2695452 are attached as Exhibits A, B and C, respectively.

12. GTO also protects its intellectual property through patents. As pertinent to this case, on July 7, 2009, United States Letters Patent No. 7,557,525, entitled DUAL SWING GATE CONTROL SYSTEM ("'525 Patent"), was duly and legally issued to Nguyen Hung and Robert Mayer. (Exhibit D attached). The '525 Patent claims a control system for dual swing gates that employs

3

position monitors to maintain a "differential position" between the arms during closing in order to ensure proper sequencing.

13.  GTO also protects its intellectual property through copyrights.  As pertinent to this case, GTO has duly registered its product catalog with the United States Copyright Office.  A copy of GTO's copyrighted catalog is attached as Exhibit E.  GTO has also duly registered the source code for the computer software used to operate the control system underlying the '525 Patent, i.e., its MM500/502/3000/4000 master chip, its MM502/3000/4000 slave chip and its MM500/502/3000/4000 receiver chip.  (Exhibits F, G and H).

14.  GTO sells its products and replacement parts to end-user customers both directly and indirectly through authorized dealers.

15.  GTO is careful to protect its reputation for selling high quality, reliable products with respect to sales by authorized dealers.  GTO's standard product warranty specifically provides that the warranty is void if damage to the product results from "use of non-GTO specified or approved components or replacement parts."  A copy of the standard product warranty is attached as Exhibit I.

### Defendants' Infringing and Deceptive Conduct

16.  Neither GPL nor JYT is an authorized dealer of GTO products and neither has entered into a written distributor agreement with GTO.

17.  On information and belief, GPL and JYT are subject to common ownership and are engaged in a joint venture or are

otherwise operating in a coordinated manner.  Records maintained by the Florida Secretary of State indicate that the president of JYT is Julio Y. Toledo.  (Exhibit J attached).  Mr. Toledo is also involved with GPL.  Attached as Exhibit K are copies of shipping records received upon purchase of products from GPL. These records identify Mr. Toledo as the shipper.

18. Though they are not authorized GTO distributors, defendants have adopted and commenced a course of conduct in connection with the marketing and sale of gate opener replacement parts that violates all of the intellectual property rights (trademark, copyright and patent) that are central to the protection of GTO's business model as described above.

19. Defendants have infringed GTO's trademarks. First and foremost, GPL has done so by adopting a company name -- "GTO Parts, LLC" -- that in and of itself suggests that it is part of or affiliated with GTO.

20. In addition to the company name, defendants' shipping materials also include a product manual that is a verbatim copy of GTO's product manual.  Copies of GTO's manual and defendants' manual are attached, respectively, as Exhibits L and M. Defendants' copying is so pervasive that they even include GTO's telephone and fax numbers, as well as its website information. Similarly, defendants are also marketing a transmitter product that is virtually identical to GTO's transmitter product, and appears to be a direct copy or "clone" of GTO's design and trade dress.

21.  As another example, attached as Exhibit N is a copy of a "blast email" sent by defendants using the trademark "GTO PRO" that is owned by GTO.

22.  As another example, attached as Exhibit O is an advertisement placed by defendants on "Ebay" offering to sell what is described as a "GTO Mighty Mule R4211 Control Circuit Board Gate Opener."  The product advertised in Exhibit O is not in fact a GTO product, but instead a non-UL certified "knock off."

23. Defendants are also infringing GTO's copyrights in connection with an internet website they own and operate: www.openers4less.com.  A customer who enters the search term "GTO" into the search field of this website is presented photographs of several products, including at least one photograph of a GTO/Mighty Mule product (the gate opening sensor) that is identical to the photograph published by GTO in its copyrighted product catalog.  A copy of a page from defendants' website displaying the gate opening sensor in this manner is attached as Exhibit P.

24. Defendants' website is designed in a manner that would cause a reasonable consumer interested in purchasing authentic GTO/Mighty Mule products to believe he or she is able to do so through the website.  For example, upon being presented with the search result indicated in the preceding paragraph, the customer's means of obtaining further information about the 318 MHz 1-button transmitter displayed is to click "Add to Cart." At that point, the same photograph appears next to yet another

link that the customer must locate and click in order to obtain information. Finally, at the bottom of the multi-paragraph description provided when the customer clicks that link, the website states that the product is "[c]ompatible with GTO RB741 and Mighty Mule FM135." Copies if this series of web pages are attached as Exhibit Q.

25. On information and belief, GTO's trademarks appear in the meta tags and HTML code of defendants' website and are used to generate the search results referred to above.

26. The products sold by defendants identified as "compatible" with GTO/Mighty Mule products are not in fact compatible. They are not compatible because GTO's warranty requires that only authentic GTO replacement parts be used. If a customer installs one of the inauthentic knock-offs sold by defendants, his or her warranty will be voided. Also, defendants' inauthentic substitutes are not tested and certified to meet UL325 standards, as are GTO's products.

27. Defendants are also infringing GTO's patent rights. Specifically, defendants are selling a replacement control board that incorporates the patented dual swing gate control system that is the subject of the '525 patent. On information and belief, the software used in defendants' replacement control boards was created through the unauthorized copying of the copyrighted source or object code that is the subject to Exhibits F, G and H attached.

28. On September 9, 2010, GTO sent defendants cease and desist letters demanding that they cease their infringing acts.

7

Copies of these cease and desist letters are attached as Exhibits R and S.

29. Despite GTO's written request that defendants cease use of its marks, defendants have, on information and belief, continued to market their products in the manner alleged. Such marketing is likely to cause the public to believe, contrary to fact, that defendants are authorized GTO dealers, or that defendants' business and the automatic gate operator parts they sell are sponsored, licensed and/or otherwise approved by, or are in some way connected or affiliated with, GTO.

## Count I:  Trademark Infringement

30. GTO incorporates and realleges as if fully set forth herein paragraphs 1 through 29 of the Complaint.

31. GTO owns the rights to the valid and legally protectable registered trademarks "GTO", "GTO/PRO" and "Mighty Mule, including but not limited to the goodwill and equity associated with the marks.  The marks are, at a minimum, descriptive and have achieved secondary meaning with the relevant consuming public, which has come to recognize products bearing the marks as high quality and connected with GTO.  Due to GTO's integrity and investment of time, effort, and other resources to promote and protect the marks as symbols of excellence, the marks now enjoy, and have long enjoyed, an exceedingly valuable goodwill and strong secondary meaning in the market of consumers and potential consumers of the GTO family of products within the United States and throughout the world.

32. Registration Nos. 2158895, 2045729 and 2695452 are each *prima facie* evidence of the validity and GTO's ownership thereof, and are constructive notice of GTO's ownership of the marks, all as provided by §§ 7(b) and 22 of the Federal Trademark Act, 15 U.S.C. §§ 1057(b) and 1072. As Registration Nos. 2158895, 2045729 and 2695452 have each achieved incontestable status under § 15 of the Federal Trademark Act, 15 U.S.C. § 1065, said registrations are conclusive evidence of GTO's exclusive right to use the marks "GTO", "GTO/PRO" and "Mighty Mule" in commerce.

33. GTO and defendants are competitors in the market for automatic gate openers and associated replacement equipment.

34. Defendants are using GTO's registered trademarks in a manner intended to cause the public to believe that their inauthentic substitutes emanate from, or are endorsed by, affiliated with, or sponsored by, GTO.

35. Defendants' use of GTO's trademarks is likely to and has caused confusion, mistake, and deception as to defendants' affiliation, association, or connection with GTO, and GTO's sponsorship, endorsement, and approval of the inauthentic substitutes sold by defendants.

36. Upon information and belief, defendants have used GTO's trademarks in connection with advertising, promoting, marketing, and selling their inauthentic substitutes in interstate commerce, including but not limited to on their internet website.

37.  Defendants knew or should have known that their conduct was false and misleading and/or likely to mislead.

38.  Defendants' actions have at all times been without GTO's consent.  Defendants' acts constitute willful and deliberate infringement of GTO's marks.

39.  As an actual and proximate result of defendants' actions, GTO has suffered and will continue to suffer irreparable injury to its business, reputation and goodwill. GTO has no adequate remedy at law for these wrongs and injuries. The damage to GTO includes harm to its goodwill and reputation that money cannot compensate.  GTO is, therefore entitled to a preliminary and permanent injunction, as set forth in 15 U.S.C. § 1117, restraining and enjoining defendants and their agents, servants, and employees, from engaging in false advertising and from otherwise making or utilizing false and misleading statements in connection with the promotion, advertisement or sale of defendants' goods, services or commercial activities.

40.  As an actual and proximate result of defendants' actions, GTO has suffered damages.  Pursuant to 15 U.S.C. sec. 1117, GTO is entitled to damages for defendants' Lanham Act violations, an accounting for profits made by defendants' on sales of their inauthentic discount substitutes and restitution and the disgorgement of defendants' ill-gotten gains, as well as recovery of GTO's costs incurred in prosecuting this action.

41.  GTO is informed and believes that defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional

case entitling GTO to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

### Count II: Copyright Infringement

42. GTO incorporates and realleges as if fully set forth herein paragraphs 1 through 29 of the Complaint.

43. GTO's copyrighted product catalog and the source and object code incorporated into its control board are original works of authorship fixed in a tangible medium of expression, and are copyrightable subject matter under the law of the United States.

44. GTO at all times retained all ownership and copyright in and to its copyrighted materials and has thereby maintained the validity of its copyrights in its copyrighted materials.

45. GTO currently and at all relevant times has been the sole author and proprietor of all right, title and interest in and to the copyrighted product catalog and computer source code and object code that is the subject of Exhibits E, F, G and H attached.

46. Defendants have infringed upon GTO's copyrights by using protected elements of the copyrighted materials and by copying, reproducing, selling or distributing protectable elements of GTO's copyrighted materials. Defendants' actions constitute copyright infringement in violation of the Copyright Act, 17 U.S.C. sec. 101, et seq.

47. Alternatively, and to the extent other unknown persons or entities copied GTO's source code or object code and manufactured replacement control boards for resale by

defendants, defendants contributed to the infringing acts of such unknown persons or entities. Without authorization, defendants induced and encouraged the infringement by continuing to purchase and distribute infringing control boards notwithstanding knowledge of and specific notice regarding the infringement, thereby providing a national and worldwide distribution channel for the infringing replacement control boards.

48. Defendants used, copied, made derivative works, sold and distributed GTO's copyrighted materials with full knowledge that their use was unauthorized. Therefore, defendants' actions have been willful and intentional, in disregard and indifference to GTO's rights.

49. Defendants' copyright infringement has caused, and will continue to cause, GTO to suffer substantial injuries, loss and damage, and GTO is entitled to recover damages, including any and all profits defendants have made as a result of their wrongful conduct pursuant to 17 U.S.C. sec. 504. Alternatively, GTO may be entitled to statutory damages under 17 U.S.C. sec. 504(c).

50. Additionally, because defendants' infringement has been willful within the meaning of the Copyright Act, any award of statutory damages should be enhanced in accordance with 17 U.S.C. sec. 504(c)(2).

51. Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause GTO great and irreparable injury. It would be difficult to determine the

measure of money damages that would provide adequate relief for defendants' continuing acts.  GTO has no adequate remedy at law. Therefore, pursuant to 17 U.S.C. secs. 502 and 503, GTO is entitled to injunctive relief prohibiting defendants from further infringing GTO's copyrighted materials.

52.  GTO is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. sec. 505.

### Count III:  Patent Infringement

53.  GTO incorporates and realleges as if fully set forth herein paragraphs 1 through 29 of the Complaint.

54.  The named inventors on the '525 Patent have assigned their rights in the '525 Patent to GTO.  Since the issuance of the '525 Patent, it has been in full force and effect, and GTO is now the owner by assignment of the entire right, title and interest in and to the '525 Patent, including the right to sue for past and continuing infringements.

55.  On information and belief, defendants have infringed and continue to infringe, literally or by equivalents, the '525 Patent by making, offering for sale, selling, and/or using, in the United States, a replacement control board incorporating the patented dual swing gate control system that employs position monitors to maintain a "differential position" between the arms during closing in order to ensure proper sequencing.  Defendants are selling the infringing product without the authorization of GTO, and defendants will continue to do so unless enjoined by this Court.

56.   On information and belief, defendants have knowingly and actively induced infringement, literally or by equivalents, of the '525 Patent by causing and/or encouraging others to make, manufacture, offer for sale, sell, and/or use, in the United States, a replacement control board incorporating the patented dual swing gate control system, as described in the '525 Patent, without the authorization of GTO, and defendants will continue to do so unless enjoined by this Court.

57.   As a result of defendants' infringement of the '525 Patent, GTO is entitled to an award of damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for any use made of the invention both by defendants and by others who have been induced to make, manufacture, offer for sale, sell, and/or use the invention by defendants.

58.   Defendants have deprived GTO of its exclusive rights to the patented invention, and defendants will continue to do so unless enjoined by this Court.

59.   GTO has no adequate remedy at law to compel defendants to cease their infringement of the '525 Patent.   The resulting harm is substantial and irreparable.

60.   Unless enjoined, defendants' conduct will damage GTO's business and interfere with GTO's ability to make, have made, use, offer to use, sell, and offer to sell the subject matter of the '525 patent.

61.   By virtue of defendants' wrongful acts and omissions as alleged above, GTO is entitled to injunctive relief.

## Count IV:  Unfair Competition

62.  GTO incorporates and realleges as if fully set forth herein paragraphs 1 through 29 of the Complaint.

63.  Defendants' adoption of the business name "GTO Parts, LLC," as well as and in combination with the use of GTO's registered trademarks and copyrighted product images, constitutes false designation of origin or a false description or representation that wrongfully and falsely designates the inauthentic substitutes sold by defendants as originating from or being connected with GTO, and constitutes the utilization of a false description or representation in interstate commerce.

64.  Defendants' conduct, as described above, constitutes unfair competition and "passing off" another product as GTO's products, and the use of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact.

65.  By reason of the foregoing, defendants have violated and continue to violate 15 U.S.C. sec. 1125(a).

66.  Defendants' conduct has created confusion among members of the general public and/or is likely to cause confusion among the general public.

67.  Defendants' conduct has proximately caused damage to GTO and will continue to damage GTO irreparably.  GTO has no adequate remedy at law for these wrongs and injuries.  The damage to GTO includes harm to its goodwill and reputation in the marketplace that money cannot compensate.  GTO is, therefore, entitled to a preliminary and permanent injunction

restraining and enjoining defendants and their agents, servants, and employees, from using, registering, or transferring GTO's trademarks or any colorable imitation or variation thereof, on their internet website(s) or otherwise in connection with the promotion, advertisement, sale and marketing of their inauthentic substitutes.

68.  As an actual and proximate result of defendants' conduct, GTO has suffered damages. Pursuant to 15 U.S.C. sec. 1117, GTO is entitled to damages for defendants' Lanham Act violations, an accounting for profits made by defendants on sales of GTO imitations, and restitution and the disgorgement of defendants' ill-gotten gains, as well as recovery of its costs incurred in prosecuting this action.

69.  Defendants' conduct has been willful, with the intent to cause confusion and deceive.  Accordingly, GTO is entitled to recover three times its damages and defendants' profits, as well as its reasonable attorneys' fees incurred in prosecuting this action, pursuant to 15 U.S.C. sec. 1117.

### Count V:  Deceptive and Unfair Trade Practices

70.  GTO incorporates and realleges as if fully set forth herein paragraphs 1 through 29 of the Complaint.

71.  By reason of the foregoing, defendants have been and continue to engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of their trade or commerce, in violation of Section 501, Fla. Stat.

72.  Defendants' conduct has proximately caused damage to GTO and will continue to damage GTO irreparably.  GTO has no adequate remedy at law for these wrongs and injuries.  The damage to GTO includes harm to its goodwill and reputation in the marketplace that money cannot compensate.  GTO is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using, registering, or transferring GTO's trademarks or any colorable imitation or variation thereof, on their internet website or otherwise in connection with the promotion, advertisement, sale and marketing of their inauthentic discount substitutes.

73.  GTO seeks compensatory damage in an amount that will compensate it for all damages caused by defendants.

## **PRAYER FOR RELIEF**

Wherefore, plaintiff GTO prays for judgment against defendants as follows:

a.  For a judgment that defendants have willfully and intentionally infringed GTO's trademarks, copyrights and U.S. Patent No. 7,557,525;

b.  Entering judgment in favor of GTO for defendants' intentional, knowing and willful unfair competition in violation of 15 U.S.C. sec. 1125;

c.  Entering judgment in favor of GTO for defendants' intentional, knowing and willful violation of Section 501, Fla. Stat.;

d.  Awarding GTO actual damages and treble damages, interest (including prejudgment interest), and its reasonable attorneys' fees and costs incurred in prosecuting this action

e.  Preliminarily and permanently enjoining defendants and their officers, agents, servants, directors, and employees, and all persons in active concert or participation with them, from directly or indirectly making or causing to be made, offering or causing to be offered for sale, selling or causing to be sold, or using or causing to be used, any replacement control board incorporating a dual swing gate control system that employs position monitors to maintain a "differential position" between the arms during closing in order to ensure proper sequencing automatic gate opener, as described in the '525 patent, or otherwise directly or indirectly infringing or inducing the infringement, either literally or by equivalents, of the '525 patent.

f.  Preliminarily and permanently enjoining defendants and their officers, agents, servants, directors, and employees, and all persons in active concert or participation with them, from:  (a) passing off GTO's products as its own; (b) reproducing or displaying the GTO, GTO/PRO of Mighty Mule marks in any form, including any derivatives thereof, on its Internet website or otherwise; (c) further creating confusion

18

as to the rightful ownership of the GTO, GTO/PRO or Mighty Mule marks;

g.   Preliminarily and permanently enjoining defendants and their officers, agents, servants, directors, and employees, and all persons in active concert or participation with them, from using, copying, reproducing, making derivative works or making any other infringing use or infringing distribution of software programs, catalogs or product manuals protected by the following federally registered copyrights: (a) TX0006142911; (b) TX0006142913; (c) TX0006142919; and

h.   For such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

AUSLEY & McMULLEN

/s/Robert N. Clarke, Jr.____
Robert N. Clarke, Jr.
Fla. Bar No. 0592900
Martin B. Sipple
Fla. Bar No. 0135399
123 South Calhoun Street
P.O. Box 391 (zip 32302)
Tallahassee, Florida 32301
(850) 224-9115 – telephone
(850) 222-7560 – facsimile

Attorneys for Gates That Open, LLC